MR. JUSTICE HODGES
delivered the opinion of the Court.
We granted certiorari to review the unpublished memorandum opinion of the court of appeals in Commissioner Mrs. Armando Sisneros v. Woodward Governor Company, No. 75-133, which was issued only to the parties on October 9, 1975. This case has important significance to the Colorado Civil Rights Commission in its enforcement of the Colorado Anti-Discrimination Act of 1957 (sections 24-34-301, et seq., C.R.S. 1973).
The issue is whether section 24-34-307, C.R.S. 1973 authorizes the commission, or any member of the commission, to file a complaint against any employer for engaging in alleged discriminatory or unfair employment practices, when the complaint is not premised on the claim of an aggrieved person or persons. The court of appeals affirmed the judgment of the trial court which held that such a complaint is not authorized. We affirm.
This action was commenced in the trial court[1] to enforce an administrative subpoena issued by the Colorado Civil Rights Commission against the respondent Woodward Governor Company (employer). The Commission issued the subpoena to produce certain employment records in preparation for an administrative hearing upon an amended complaint brought by Commissioner Sisneros.[2] This complaint alleged that the employer was violating the Colorado Anti-Discrimination Act by engaging in certain employment practices which discriminated on the basis of race and sex.
The complaint principally asserted that discrimination occurred because the proportion of females and Spanish surnamed individuals in the employer’s work force was far below the proportion of these individuals in the labor forces in the counties where the employer did business. The complaint then recited several practices that it claimed could have been responsible for such a low representation of minorities.
It alleged that the employer denied notice of job openings to minorities because of its failure to use referral organizations that specialize in recruiting these groups and because of its practice of hiring people who are either walk-ins or referrals by its current employees. The complaint also stated that the employer did not have any written descriptions of job openings, which encouraged subjective evaluations of the applicant’s abilities, and that it used biased tests for evaluating applicants. The complaint next alleged that the employer’s maternity leave policies and dress code had unfairly discriminated against women. Finally, it averred that the *456 employment application form, which inquired into the applicant’s marital status, number of children, education, height, and financial difficulties, screened out otherwise qualified minority applicants. The complaint, however, did not allege that anyone had ever been in fact injured by any of the foregoing acts of the employer.
On the basis of this complaint, the commission requested the employer to produce its records concerning is affirmative action plan, its job descriptions, its employment tests, its pregnancy leave policy, its list of employees, and a listing of employee terminations for the years 1969 thru 1972. The company refused to comply with this request.
The commission then petitioned the trial court to issue a subpoena duces tecum, which the court is authorized to do in a “proper case.”[3] The trial court denied this petition and ruled that the allegations of the complaint did not present a “proper case” for the trial court to intercede.
The court of appeals affirmed the trial court’s denial of this petition. The court of appeals deemed its decision in Colorado v. Adolph Coors Corp., 29 Colo.App. 240, 486 P.2d 43 (1971), to be controlling, since it interpreted that case as requiring that a commissioner’s complaint allege that a particular individual or individuals in fact suffered from the discriminatory acts specified in the complaint.
The petitioner argues that the court of appeals misconstrued the Coors decision as requiring allegations of a specific aggrieved person when in fact the decision required only that the alleged discriminatory practices be specific in nature. The thrust of petitioner’s argument is that a commissioner is empowered to file a complaint against systematic discriminatory practices that are not necessarily related to a particular job applicant or employee.
We agree with the court of appeals in ruling that the commissioner’s complaint did not present a “proper case” and that the trial court in its judgment properly denied the petition of the commission for the issuance of a subpoena duces tecum. We, however, base our decision on the mandates of the statute governing the filing of complaints before the commission.
Section 24-34-307, C.R.S. 1973, states:
“Complaint - hearing - procedure. (1) Any person claiming to be aggrieved by a discriminatory or unfair employment practice may by himself or his attorney-at-law, make, sign and file with the commission a verified written complaint in duplicate which shall state the name and address of the person, employer, employment agency, labor organization, joint apprenticeship committee, or vocational school alleged to have committed the discriminatory or unfair employment practice complained of *457 and which shall set forth the particulars thereof and contain such other information as may be required by the commission. The commission, a commissioner, or the attorney general may in like manner make, sign, and file such complaint.” (Emphasis added.)
This statute does not state that the commission may make, sign and file “its” complaint, but rather only that it can “in like manner, make, sign and file such complaint.” “Such” and “in like manner” can only reasonably refer to the complaint of a person claiming to be aggrieved as stated in this provision of the statute. This statutory provision authorizes a commission complaint only in those instances where a specific person or persons have been aggrieved by the alleged discriminatory practices charged.
The result in the Coors case is consistent with our foregoing interpretation of the statute. In Coors, the court of appeals held that a commissioner’s complaint was inadequate because it only summarily alleged that Coors engaged in discriminatory employment practices and that Coors had not hired on a basis that was proportional to the percentage of minorities in the overall labor market. The court of appeals stated:
“Even in its entirety, the complaint cannot represent more than an assertion that, in theory, the respondent, Coors, may have violated the provisions of the Colorado Antidiscrimination Act of 1957. There is nothing within the amended complaint which points to any particular action or omission to act on the part of Coors which would represent a discriminatory or unfair practice under the Act. As stated, the Act requires complaint violations which are indicative that a particular violation or violations of the Act has or have in fact occurred. Generalities and indefinite, uncertain charges of the type found in the amended claim cannot form the basis for any legal proceedings. . . .”
The principal rationale used by the court of appeals in Coors was that the complaint did not provide sufficient notice to Coors of the charges against it so that Coors could defend itself. It did not specifically discuss the issue addressed in the instant case, namely, section 24-34-307(1) permits a commissioner’s complaint which does not allege an aggrieved individual. We do not construe Coors as inferentially permitting a complaint without allegations of an aggrieved person.
We accordingly affirm the judgment of the court of appeals.
MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE CARRIGAN dissent.
MR. JUSTICE CARRIGAN dissenting:
I respectfully dissent.
*458 The majority bases its decision on what I consider to be a strained and artificial interpretation of section 24-34-307, C.R.S. 1973, without adequate consideration for remedial purpose of that statute. As a result, the statute, in effect, has been amended by judicial interpretation to substantially restrict the remedies provided for employment discrimination.
In an effort to provide a practical, workable means of overcoming unfair employment discrimination, the General Assembly enacted the Colorado Antidiscrimination Act of 1957. As stated by Judge Dufford in Colorado v. Adolph Coors Corp., 29 Colo.App. 240, 247, 486 P.2d 43, 46 (1971) (cert. denied), this Act “was enacted for a beneficent purpose and should be liberally construed in favor of the legal remedies which it provides.”
It is apparent from a reading of the entire Act that the initial complaint with the Commission, as authorized in section 24-34-307, is intended to begin an investigatory and conciliatory proceeding, not an adversary proceeding. Other provisions of the statute allow for litigation in the courts if conciliation procedures before the Commission do not succeed.
The specific section here at issue provides for standing to file the complaint which initiates the Commission procedure, not the court procedure. It provides:
“Complaint - hearing - procedure. (1) Any person claiming to be aggrieved by a discriminatory or unfair employment practice may by himself or his attorney-at-law, make, sign and file with the commission a verified written complaint in duplicate which shall state the name and address of the person, employer, employment agency, labor organization, joint apprenticeship committee, or vocational school alleged to have committed the discriminatory or unfair employment practice complained of and which shall set forth the particulars thereof and contain such other information as may be required by the commission. The commission, a commissioner, or the attorney general may in like manner make, sign, and file such complaint.” (Emphasis added.) Section 24-34-307, C.R.S. 1973.
The majority opinion interprets the words “in like manner” and “such,” in the last sentence of the section, to require a named, identified aggrieved person as a party to a complaint. It seems obvious, however, that “in like manner” refers to the formal requirements of the complaint; i.e., it must be verified, written and contain the same elements when filed by the attorney general, the Commission or a Commissioner as when filed by an “aggrieved person.” The word “such” in the phrase “such complaint” surely does not connote a requirement that a particular “aggrieved person” be named. It is mere legislative shorthand to avoid repeating the previously stated requirements regarding the complaint while indicating that the complaint filed by the Commission, a Commissioner, or the attorney general is, in all respects, to be treated the same as one filed by *459 an aggrieved person.
Surely if the legislature had intended the narrow interpretation adopted by the majority, the sentence in question would have read: “The commission, a commissioner, or the attorney general may in like manner make, sign and file such complaint on behalf of a named aggrieved person.” The absence of the underlined phrase from the statute clearly indicates the legislative intent to provide a remedy when no identifiable “aggrieved person” has come forward with a complaint but evidence indicates a probable cause for concern. In the alternative, a restrictive legislative intent could easily have been stated by drafting the first sentence to read, “Any person claiming to be aggrieved by a discriminatory or unfair employment practice may by himself or his attorney at law, or by the commission, a commissioner or the attorney general, make, sign and file . . . a . . . complaint. . . .” No such intent appears.
Where an employer has regularly discriminated against an entire sex or ethnic group, the discrimination may be of the most obvious and invidious kind, yet there may be no identifiable “aggrieved person” since, for obvious reasons none has applied. Moreover, minority group members and women having difficulty finding employment understandably may be reluctant to be branded as litigious “troublemakers” by becoming named plaintiffs in discrimination cases. They may be deterred by fear that the adverse notoriety of being named in litigation will only add to their problems in seeking employment.[1]
Yet the policy of the Act clearly covers cases of wide-scale discrimination, as well as those involving only a single employee or job seeker. Today’s majority opinion frustrates the obvious purpose of the Act to deal in a practical way with employment discrimination and unnecessarily hamstrings the Commission in its efforts to achieve equal job opportunity in Colorado.
In my opinion, this statute grants not only an aggrieved person, but also the Commission, a Commissioner, or the attorney general, standing to seek review of alleged discriminatory employment practices. This, clearly, was the interpretation of the Court of Appeals in the Coors case, for the opinion declared: “The commission, a commissioner or the attorney general is also given the right to make such a complaint, but ‘in like manner.’” Colorado v. Adolph Coors Corp., 29 Colo.App. 240, 244, 486 P.2d 43, 45 (1971). That case was commenced directly by the Commission *460 without naming any “aggrieved person.” The Commission’s standing to so proceed was not challenged. There the subpoena was denied solely because the complaint failed to allege with sufficient particularity the acts claimed to be discriminatory. In my view, any support the majority opinion seeks to infer from the Coors case disappears when that case is scrutinized closely.
The statute here involved does not say that the specified state officers cannot prosecute actions to prevent generalized discriminatory practices. Moreover, nothing in the statute states that the particulars set forth by the state officers in their complaint must include the names of specific individuals subjected to discriminatory or unfair employment practices. The statute is silent in this respect. The majority opinion, however, has the effect of amending the statute to add these additional restrictions.
The broad issue is whether the Commission shall be allowed to commence investigatory and conciliatory proceedings, in cases where it feels there is generalized employment discrimination, without having specific, named “aggrieved party” willing to become a plaintiff if conciliation fails. Implicit is the underlying problem of whether full efficacy is to be given to the legislative intent that the Commission be provided useful tools of investigation and conciliation as well as litigation. The same underlying problem of interpretation, under the federal Civil Rights Act of 1964, 42 U.S.C., section 2000e-5(a), was dealt with by Circuit Judge Doyle in the following language (in a dissent which on rehearing by the full court became the court’s view):
“If the majority’s narrow and technical construction of the statute ultimately prevails, the Commission would be hamstrung in that it would have to have made its investigation before launching discovery proceedings, and after all that is the only purpose of the Commissioner’s complaint. The complaint’s object is to obtain the facts so that conciliation efforts can be carried out. To require the Commission to have the facts before it starts thwarts the entire purpose of the Act. If specific evidence is set forth, the scope of the investigation would thereby be restricted to that transaction, hence there would be no opportunity for the Commission to conduct an investigation of general employment practices such as are described in the complaint at bar.
‘ ‘The other circuits which have considered the question have given this statutory provision, 42 U.S.C. § 2000e-5(a), a less technical and more reasonable construction.” (Citing cases.) Sparton Southwest, Inc. v. Equal Employment Opportunity Comm’n, 461 F.2d 1055, 1057-58 (10th Cir. 1972).
The federal Act, like the Colorado statute, mentions an “aggrieved person” and requires that the employment discrimination complaint set forth the facts upon which it is based. Yet no “aggrieved person” need be named in a complaint filed by the Commission. Numerous authorities have held that the Act is to be liberally interpreted, that it is sufficient *461 broadly to describe the types of discrimination being practiced, and that an allegation of a pattern of discrimination is enough. New Orleans Public Service, Inc. v. Brown, 507 F.2d 160 (5th Cir. 1975); Mountain States Telephone and Telegraph Co. v. EEOC, 466 F.2d 541 (10th Cir. 1972); Adolph Coors Company v. EEOC, 464 F.2d 1270 (10th Cir. 1972), cert. denied, 410 U.S. 929 (1973); Sparton Southwest, Inc. v. EEOC, 461 F.2d 1055 (10th Cir. 1972); General Employment Enterprises, Inc. v. EEOC, 440 F.2d 783 (7th Cir. 1971); Local 104, Sheet Metal Workers v. EEOC, 439 F.2d 237 (9th Cir. 1971); Bowaters Southern Paper Corporation v. EEOC, 428 F.2d 799 (6th Cir. 1970), cert. denied, 400 U.S. 942 (1970); U.S. v. Gustin-Bacon Division, Certainteed Products Corp., 426 F.2d 539 (10th Cir. 1970).
In my view, the majority opinion tends to thwart the operation of the Colorado Antidiscrimination Act. The General Assembly in 1957 declared the policy of this state in opposition to employment discrimination based on race, creed, color, sex, national origin, or ancestry. The Colorado Civil Rights Commission, having been charged with implementing that policy, should not, by judicial interpretation, be deprived of its standing to enforce the Act. If the General Assembly did not intend the Commission to have standing, it could have amended the Act during the five and one-half years since the Court of Appeals decided the Coors case. Absent any such clear indication of legislative intent, I would interpret the statute to give maximum effect to the policy which it expressed: to achieve fair, equal employment opportunity by practical means.
For these reasons, I would reverse the decision of the Court of Appeals.
MR. CHIEF JUSTICE PRINGLE authorizes me to say that he joins in this dissent.

 District Court of Larimer County, Honorable Conrad L. Ball, Judge.

 Pursuant to section 24-34-307(1), C.R.S. 1973.

 Section 24-34-305(1)(e)(1), C.R.S. 1973.

 This practical problem in administering employment discrimination statutes has been recognized in the federal cases. See e.g., Bowaters Southern Paper Corp. v. Equal Employment Opportunity Comm'n, 428 F.2d 799, 800 (6th Cir. 1970) (where it was, “conceded that the Commissioner need not set forth the names of employees who have allegedly suffered discrimination, nor is the Commissioner obliged to reveal his sources of information, which might deter individuals from making complaints for fear of retaliation.”)